UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LESLIE ROMERO,<br><br>              Plaintiff,<br><br>  vs.<br><br>WOUNDED KNEE, LLC d/b/a SIOUX-PREME WOOD PRODUCTS, a South Dakota limited liability company; and WOUNDED KNEE COMMUNITY DEVELOPMENT CORPORATION, a South Dakota corporation,<br><br>              Defendants. | CIV. 16-5024-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Leslie Romero initiated this action against defendants Wounded Knee LLC ("WK LLC"), Wounded Knee Community Development Corporation ("WKCDC") and Mark St. Pierre. (Docket 1). Upon plaintiff's motion, the court dismissed Mr. St. Pierre. (Docket 31). WK LLC has not formally appeared in the case. WKCDC retained counsel and appeared. (Docket 32).

Plaintiff claims she was sexually assaulted and harassed while employed by defendants. (Docket 1). She alleges torts and violations of Title VII of the Civil Rights Act of 1964 and the South Dakota Human Relations Act of 1972. Id. Plaintiff is an enrolled member of the Oglala Sioux Tribe ("Tribe") and the incidents alleged in the complaint occurred within the exterior boundaries of the Pine Ridge Indian Reservation ("Pine Ridge") at Manderson, South Dakota.

**PROCEDURAL AND FACTUAL BACKGROUND**[1]

Defendants failed to file answers to plaintiff's complaint, so the clerk entered default against them. (Docket 14). Plaintiff filed a motion for default judgment, and the court entered an order finding she was entitled to default judgment. (Docket 27). The court later acknowledged it will not enter final judgment in plaintiff's favor until the court makes findings regarding the specific claims in the complaint on which it would enter judgment and the appropriate amount of damages supported by evidence. (Docket 39). While the court granted plaintiff's motion for default judgment, a final judgment has not been entered in this case.

To prevent an adverse final judgment, WKCDC raised the issues of tribal court exhaustion and tribal sovereign immunity in a motion to set aside default judgment. (Dockets 41 & 42). WKCDC alleges its connection with the Tribe provides WKCDC with tribal sovereign immunity. (Dockets 41 & 42). According to WKCDC, its origins trace back to a federal economic program. (Docket 42 at p. 7). WKCDC indicates that nearly two decades ago the Oglala Oyata Woitancan ("OOW") was established in coordination with the federal government. Id. The OOW was a geographic designation covering primarily

---

[1] The court entered an order regarding sanctions under Federal Rule of Civil Procedure 37. (Docket 79). This order recites part of the background set forth in the Rule 37 order and expands on issues related to the doctrine of tribal court exhaustion.

Pine Ridge.  Id.² An emphasis of the OOW was facilitating infrastructure development funds from the federal government to Pine Ridge.  See Danielle Her Many Horses, Oglala Lakota Nation Profile, University of New Mexico School of Law Tribal Law Journal, Volume 2: 2001-02, available at http://lawschool.unm.edu/tlj/volumes/vol2//oglala/index.html#rfn105.  The Tribe's Constitution created community governments called Districts that represent local interests, and each District could choose whether to participate in the OOW.  Id.  WKCDC claims there was an OOW Board with a member who was also a member of an entity WKCDC refers to as the Wounded Knee District Task Force ("the District Task Force").  (Docket 42 at p. 7).  According to WKCDC, once the OOW expired, the District Task Force became WKCDC and the District Task Force's assets and property were transferred to WKCDC.  Id. WKCDC alleges its articles of incorporation demonstrate its affiliation with the Tribe and WKCDC's tribal sovereign immunity.  Id. at pp. 8-9.

Plaintiff filed a response to WKCDC's motion to set aside default judgment, and plaintiff requested more time to conduct discovery on the issues spotlighted in the motion.  (Docket 50).  The court informally communicated with the parties about a discovery timeline and entered a scheduling order requiring the parties to participate in discovery on the issues of tribal court exhaustion and tribal sovereign immunity.  (Docket 54).

---

²The OOW is also referred to as the Oglala Sioux Tribe Empowerment Zone.  See Oglala Sioux-Pine Ridge Rural Round II Empowerment Zone, U.S. Department of Housing and Urban Development, available at https://www.hud.gov/program_offices/comm_planning/economicdevelopment/programs/rc/tour/sd/oglalasiouxpineridge/.

WKCDC, through its attorney Deborah Dubray, violated the discovery order and the court granted plaintiff's motion for sanctions pursuant to Federal Rule of Civil Procedure 37. (Docket 79). Part of the noncompliance was Ms. Dubray refusing to participate in discovery and filing a Rule 12(b)(1) motion claiming WKCDC was entitled to tribal sovereign immunity. (Docket 55). The court held a show cause hearing prior to entering the Rule 37 sanctions order. (Docket 70). At the conclusion of the show cause hearing, the court ordered the parties to submit briefing on the applicability of tribal court exhaustion to the case.

## ANALYSIS

"Tribal sovereign immunity predates the birth of the Republic. The immunity rests on the status of Indian tribes as autonomous political entities, retaining their original natural rights with regard to self-governance." Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 29 (1st Cir. 2000) (internal citation and quotation marks omitted). "As a matter of comity, the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself. Thus, a federal court should stay its hand in order to give tribal forums the initial opportunity to determine cases involving questions of tribal authority." Colombe v. Rosebud Sioux Tribe, 747 F.3d 1020, 1024 (8th Cir. 2014) (internal alteration, citation and quotation marks omitted). "Allowing tribal courts to make an initial evaluation of jurisdictional questions serves several important functions, such as assisting in the orderly administration of justice, providing federal courts

with the benefit of tribal expertise, and clarifying the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." DISH Network Serv. L.L.C. v. Laducer, 725 F.3d 877, 882 (8th Cir. 2013) (citing Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856-57, (1985)). "Exhaustion includes both an initial decision by the tribal court and the completion of appellate review." Id. at 882-83 (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987)).

"[T]he doctrine of tribal court exhaustion applies even when there is no pending concurrent tribal action." Heldt v. Payday Fin., LLC, 12 F. Supp. 3d 1170, 1180 (D.S.D. 2014). Courts can raise tribal court exhaustion *sua sponte*. AT&T Corp. v. Oglala Sioux Tribe Util. Comm'n, No. CIV 14-4150, 2015 WL 5684937, at *5 (D.S.D. Sept. 25, 2015) ("While the parties do not raise the question of the applicability of tribal exhaustion doctrine, the Court finds it to be a necessary consideration and thus raises it *sua sponte*."); see United States v. Tsosie, 92 F.3d 1037, 1041 (10th Cir. 1996) (holding tribal exhaustion may be addressed *sua sponte*).

Tribal sovereign immunity goes to the court's subject matter jurisdiction and usually the court must address jurisdictional issues first. But the precedent of the United States Court of Appeals for the Eighth Circuit requires the court to enforce the exhaustion of tribal court remedies before fully analyzing tribal sovereign immunity. In Davis v. Mille Lacs Band of Chippewa Indians, the Eighth Circuit held "the Supreme Court has stated that the issue of a tribe's sovereign immunity is the very kind of question that is to be decided

5

in the first instance by the tribal court itself." 193 F.3d 990, 992 (8th Cir. 1999); see Malaterre v. Amerind Risk Mgmt., 373 F. Supp. 2d 980, 982 n.3 (D.N.D. 2005) ("It has been established in the Eighth Circuit that tribal exhaustion precedes the tribal immunity inquiry.");[3] see also Ninigret ("The Eighth Circuit has held that a district court should begin this phase of its inquiry by addressing exhaustion and, if it determines that tribal remedies must be exhausted, give the tribal court the first crack at considering the bona fides of the sovereign immunity defense.").[4]

Whether tribal sovereign immunity shields WKCDC from suit raises important legal and factual issues federal courts often analyze. See J.L. Ward Associates, Inc. v. Great Plains Tribal Chairmen's Health Bd., 842 F. Supp. 2d 1163, 1171-72 (D.S.D. 2012) (collecting cases). Federal courts also routinely provide tribal courts the first opportunity to address those issues. See, e.g., Sharber v. Spirit Mountain Gaming Inc., 343 F.3d 974, 976 (9th Cir. 2003) (per curium) ("Nor did the district court err in concluding that the tribal exhaustion

---

[3]This ruling was not reversed by the Eighth Circuit, but a subsequent, independent ruling in Amerind Risk Mgmt. Corp. v. Malaterre, 585 F. Supp. 2d 1121 (D.N.D. 2008), was reversed in Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680 (8th Cir. 2011).

[4]In Ninigret, the United States Court of Appeals for the First Circuit clearly stated its disagreement with the Eighth Circuit's precedent on this point, stating the Eighth Circuit's "view appears to be based on a misreading of National Farmers, and it has mustered scant support elsewhere. We respectfully decline to adopt it and hold instead that, as long as federal subject-matter jurisdiction exists, a defense predicated on tribal sovereign immunity is susceptible to direct adjudication in the federal courts, without reference to the tribal exhaustion doctrine." Ninigret, 207 F.3d at 28-29 (referring to Davis, 193 F.3d at 992) (footnote omitted).

6

requirement also applies to issues of tribal sovereign immunity.  Determining whether the tribe has waived immunity, or whether Congress has abrogated its immunity, requires a careful study of the application of tribal laws, and tribal court decisions.") (internal quotation marks omitted).[5]

Plaintiff claims she "exhausted all tribal remedies[.]"  (Docket 67 at p. 1).  Plaintiff states she met with then-President of the Tribe, Brian Brewer, about the sexual harassment.  He said WKCDC was not part of the Tribe and encouraged her to file a lawsuit.  Id.  She pursued her claim with the Tribal Employment Rights Office ("TERO"), which determined WKCDC was not part of the Tribe and instructed plaintiff to file a charge with the Equal Employment Opportunity Commission ("EEOC").  Id. at pp. 1-2.  Plaintiff claims "TERO determined Plaintiff Romero exhausted her tribal remedies, and her only next option was to file a charge with the EEOC."  Id. at p. 2.  Plaintiff indicates she met with the Tribe's Attorney General, Tatewin Means, who "instructed Plaintiff Romero to file a charge of discrimination with the EEOC, and that there was no need to file in tribal court as it would end up in federal court anyway."  Id.  Plaintiff states that during the EEOC administrative process, John Hussman, who claimed he was WKCDC's executive director, provided a response to an

---

[5]See also Confederated Tribes of Grand Ronde v. Strategic Wealth Mgmt. Inc., No. C-04-08-003, 2005 WL 6169140 (Grand Ronde Tribal Ct. Aug. 5, 2005) ("Few aspects of the Tribe's political integrity and economic security are more important than its sovereign immunity from suit.  For this reason, determining whether a tribe has waived its immunity from suit is precisely the type of question that should be determined by the Tribal Court.")

7

EEOC investigator indicating WKCDC is not tribally owned. (Docket 77 at p. 5).

These efforts from plaintiff are not sufficient to show exhaustion of tribal court remedies. Plaintiff must exhaust available tribal *court* remedies before receiving relief from this court. Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412, 1420 (8th Cir. 1996) ("Supreme Court precedent and this court's pronouncements based thereon require exhaustion of tribal *court* remedies in matters related to reservation affairs.") (emphasis added). "The general rule is that a person who alleges that federally secured rights have been violated by a tribal government must exhaust his tribal remedies, *both judicial and administrative*, before coming into federal court." Olney Runs After v. Cheyenne River Sioux Tribe, 437 F. Supp. 1035, 1036 (D.S.D. 1977) (emphasis added).

Plaintiff devotes most of her argument on tribal court exhaustion to claiming she "was not required to exhaust any remedies in Tribal Court before bringing this action in federal court." (Docket 77 at p. 6) (bold omitted). This argument focuses on the plaintiff's cause of action brought pursuant to Title VII of the Civil Rights Act of 1964. Id. at pp. 6-20. Plaintiff contends federal courts have exclusive jurisdiction over Title VII claims and the only exhaustion requirement is the EEOC administrative process. Id.

Even if the court assumes federal courts possess exclusive Title VII jurisdiction, that does not mean plaintiff may disregard tribal court exhaustion in this case. Plaintiff advances Title VII claims—along with torts pursuant to

8

South Dakota law and allegations under the South Dakota Human Relations Act of 1972—against WKCDC. See supra at p. 1. WKCDC provides a colorable argument for it being entitled to tribal sovereign immunity. See supra at pp. 2-3. Whether tribal sovereign immunity blocks plaintiff's claims against WKCDC is an inquiry antecedent to whether a non-federal court may exercise authority over Title VII claims. If WKCDC is not an entity plaintiff may sue, the latter inquiry does not matter.[6] The law of the Eighth Circuit is clear when a party raises tribal sovereign immunity as a defense and tribal court remedies are not exhausted: the case goes to tribal court. See Davis, 193 F.3d at 992; Malaterre, 373 F. Supp. 2d at 982 n.3.

An indirect consequence of plaintiff's argument on Title VII jurisdiction prompts the following question: to what extent must plaintiff pursue her case in tribal court? The baseline principle is "a federal court should stay its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction." Strate v. A-1 Contractors, 520 U.S. 438, 449 (1997) (internal quotation marks omitted). As a part of determining its own jurisdiction, the Tribe's court system must have the chance to evaluate WKCDC's tribal sovereign immunity defense. "[T]he Eighth Circuit has not required litigants to adjudicate the full merits of a case in tribal court before a federal court can exercise jurisdiction." Kodiak Oil & Gas (USA) Inc. v. Burr, 303 F. Supp. 3d 964, 972 (D.N.D. 2018); see, e.g., Belcourt Pub. Sch. Dist. v. Davis, 786 F.3d

---

[6]Plaintiff's briefing makes indirect points about how an entity may waive tribal sovereign immunity, (Docket 67 at pp. 18-19), but she makes no affirmative argument regarding WKCDC waiving immunity.

9

653, 656 n.2 (8th Cir. 2015) ("The School District and its employees were not required to fully litigate the merits of the claims before seeking review of the Tribal Court's jurisdiction in federal court."). "Once the tribal remedies have been exhausted, the Tribal Court's determination of tribal jurisdiction may be reviewed in the federal district court." Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation, 27 F.3d 1294, 1300 (8th Cir. 1994).

Because plaintiff did not exhaust remedies available in tribal court, the court must assess whether an exception applies. There are three exceptions to tribal court exhaustion: "(1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; or (3) exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." Bruce H., 93 F.3d at 1420 n.14. "A party seeking an exception bears the burden of making a substantial showing of eligibility." Norton v. Ute Indian Tribe of the Uintah & Ouray Reservation, 862 F.3d 1236, 1243 (10th Cir. 2017) (alteration and internal quotation marks omitted) cert. denied sub nom. Norton v. Ute Indian Tribe of Uintah & Ouray Reservation, 138 S. Ct. 1001 (2018). "Exceptions typically will not apply so long as tribal courts can 'make a colorable claim that they have jurisdiction.'" Id. (quoting Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1240 (10th Cir. 2014)).

Some considerations raised in plaintiff's brief relate to both the first and third exceptions, so the court addresses them together. "The Supreme Court has declined to permit parties to excuse themselves from the exhaustion

10

requirement by *merely alleging* that tribal courts will be incompetent or biased." Duncan, 27 F.3d at 1301 (emphasis in original) (citing Iowa Mut., 480 U.S. at 18-19). Without evidence "of bias, [the court] will not presume the Tribal Court to be anything other than competent and impartial." Id. "A party asserting futility cannot merely assume that it would not receive a fair trial in tribal court; it must present evidence of bias." Attorney's Process & Investigation Servs., Inc. v. Sac & Fox tribe of The Mississippi In Iowa, 401 F. Supp. 2d 952, 959 (N.D. Iowa 2005). "[A]bsent . . . evidence of bias . . . a party cannot skirt the tribal exhaustion doctrine simply by invoking unfounded stereotypes." Ninigret, 207 F.3d at 34.

Plaintiff states WKCDC's delay in presenting the issue of tribal court exhaustion shows bad faith. (Docket 77 at pp. 20-21). In plaintiff's view, "[f]orcing [p]laintiff to file in tribal court (despite the fact she was told multiple times by officers of and the lawyer for the [Tribe's] government that it was not the proper venue for her claim) would be a great disservice to her and would further allow WKCDC to avoid liability for the actions of its employees." Id. at pp. 20-21. Plaintiff also asserts "there is no opportunity for the tribal court to develop [a] 'full record' as to jurisdiction because there are no court reporters in the [Tribe's] tribal court." Id. at p. 21.

Plaintiff alleges "the tribal court judge is John Hussman, Sr. The tribal judge's son, John Hussman, Jr., is a witness in this case, having worked for [WKCDC.]" (Docket 77 at p. 30). Plaintiff contends this "would create a conflict of interest and be highly prejudicial to [p]laintiff." Id. To support her argument

11

about the deficiencies of the Tribe's court system, plaintiff asserts: the Tribe's "courts are often without a judge, have frequent and lengthy judge suspensions, lose files, and often utilize judges who are not lawyers[;]" "[t]he [Tribe's] court often fails to rule on motions, letting issues sit for years[;]" "[l]awyers frequently make trips to tribal court only to be told the court has lost the file or to learn once they arrive that the court is continuing the hearing[;]" and "[i]t is typical to make numerous repeated trips to tribal court to attempt to have a hearing on one single motion." Id. at pp. 30-31.

While plaintiff provides thorough argument, she does not present evidence meeting the first or third exceptions to tribal court exhaustion. Plaintiff "offers [insufficient] evidence of affirmative misleading or other misconduct," in the Tribe's court system, "and, absent such evidence, we must presume the tribal court to be properly constituted, competent, and impartial." Ninigret, 207 F.3d at 34; see Duncan, 27 F.3d at 1301. Plaintiff's only specific point is the possible family relationship between a tribal court judge and a potential witness, but that fact alone is not enough to conclude the tribal court would not deal with conflicts of interest in a fair manner. "Although claims of futility, bias, bad faith, and the like roll easily off the tongue, they are difficult to sustain." Ninigret, 207 F.3d at 34. Plaintiff does not sustain them here. The court finds the first and third exceptions do not apply.

As to the second exception, "tribal courts rarely lose the first opportunity to determine jurisdiction because of an 'express jurisdictional prohibition.'" Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1502 (10th Cir. 1997). "The

majority of cases applying the 'express jurisdictional prohibition' exception involve statutes that grant the federal government exclusive jurisdiction." Heldt, 12 F. Supp. 3d at 1186 (collecting cases).

Plaintiff claims she meets this exception based on her argument regarding Title VII jurisdiction. (Docket 77 at p. 21). She asserts her case "solely deals with federal law[ ]" and "[t]here is no proceeding pending in any tribal court that would create competition between the federal court and the tribal court[.]" Id. The complaint advances multiple causes of action grounded in part on state law and some claims with state law as their sole basis. (Docket 1 at pp. 6-14). In the prayer for relief, plaintiff asks the court to find "unlawful violations of Title VII; the South Dakota Human Relations Act of 1972, and the common law[.]" Id. at p. 14. As the court pointed out above, "the doctrine of tribal court exhaustion applies even when there is no pending concurrent tribal action." Heldt, 12 F. Supp. 3d at 1180. This is not one of the rare cases where the second exception is satisfied. See Kerr-McGee, 115 F.3d at 1502.

It is unsurprising no exception applies because they "typically will not apply so long as tribal courts can 'make a colorable claim that they have jurisdiction.' " Norton, 862 F.3d at 1243 (quoting Stidham, 762 F.3d at 1240). Chapter 2, Section 20 of the Tribe's Code states: "[t]he Oglala Sioux Tribal Court shall have jurisdiction of all suits wherein the defendant is a member of the Oglala Sioux Tribe and of all other suits between members and non-members who consent to the jurisdiction of the tribe." Subsection 20(a) governs "implied consent to tribal jurisdiction by nonmembers of the Oglala

13

Sioux Tribe." (capital letters omitted). The subsection states a nonmember "shall be deemed as having consented to jurisdiction" by doing any of the following within the exterior boundaries of Pine Ridge: "transaction of any business"; "[e]ngaging in any employer-employee relationship"; "[r]esiding on the Pine Ridge Indian Reservation"; or "[a]ny contractual agreement entered into within the exterior boundaries of the Pine Ridge Indian Reservation." OST Code Chapter 2, Section 20(a)(1)-(8).

The court stated earlier plaintiff is a member of the Tribe. See supra at p. 1. WKCDC asserts it is "an organization operated by a four member Board of Directors, [all of whom are] enrolled members of the Oglala Sioux Tribe." (Docket 78 at p. 1). According to WKCDC, "[t]here are no non-Indians involved in Plaintiff's suit." Id. WKCDC is incorporated under South Dakota law. (Docket 43 at p. 2). Based on the claims in the complaint and the individuals in the case, the tribal court has much more than "a colorable claim that [it has] jurisdiction." Norton, 862 F.3d at 1243. At a minimum, the Tribe's court system has jurisdiction over a declaratory judgment action on whether WKCDC is entitled to tribal sovereign immunity.

**ORDER**

Based on the analysis above, it is

ORDERED that the case is stayed pending tribal court exhaustion and a further order from this court.

IT IS FURTHER ORDERED that WKCDC, as the party asserting there is tribal court jurisdiction and tribal court exhaustion must occur, must file

within thirty (30) days of the date of this order a declaratory judgment action in the Oglala Sioux Tribal Court naming the plaintiff Leslie Romero to address to that court at least the issues of tribal court jurisdiction and WKCDC's tribal sovereign immunity defense. In the tribal court case, Ms. Romero may contest tribal court jurisdiction and assert her arguments regarding WKCDC's tribal sovereign immunity without waiving her assertion in this court that there is no tribal court jurisdiction.

IT IS FURTHER ORDERED that the parties shall keep the court advised of proceedings in the Oglala Sioux Tribal Court by filing upon the conclusion of any tribal court proceedings or appeals all pleadings filed by any party and all rulings by the tribal court as an attachment to an affidavit or stipulation.

Dated August 31, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE